UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                          Case No. 21-20459

ROWLAND BANES,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

A person who is in custody and to be interrogated must be cautioned and advised pursuant to the familiar *Miranda* warning protocol. *Hill v. Shoop*, 11 F.4th 373, 425 (6th Cir. 2021) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Before proceeding with questions, the interrogating officer must receive from the person in custody a knowledgeable waiver of that person's right to remain silent. *See id.* (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Both foundational elements are required to trigger the warning requirement: in custody *and* interrogation. If either element is absent, no *Miranda* cautions are required. *See United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013) ("In the absence of a custodial interrogation, the requirement to recite the *Miranda* warnings is not triggered and the analysis is at an end."); *United States v. Jimenez-Robles*, 98 F. Supp. 3d 906, 913 (E.D. Mich. 2015) ("[T]he requirements of *Miranda* arise only when a defendant is *both* in custody and being interrogated." (quoting *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005))).

Defendant Rowland Banes is charged with Assaulting a Federal Officer Using a Deadly or Dangerous Weapon, 18 U.S.C. § 111. (ECF No. 1.) Defendant brings a motion to suppress, arguing that he invoked his right to counsel shortly after officers read him his rights and that his statements must therefore be excluded at trial. (ECF No. 16, PageID.48-50.) The government filed a response (ECF No. 22), and Defendant did not submit a reply. The court has reviewed the briefs and the recorded footage which captures the disputed statements; a hearing is unnecessary. E.D. Mich. LR 7.1(f)(2). The motion will be denied.

## I. BACKGROUND

On May 27, 2020, an FBI Special Agent was conducting surveillance near an apartment building in Detroit, Michigan. (ECF No. 22, PageID.81.) After driving down an alley, he was soon followed by Defendant in a silver GMC Terrain. (*Id.*) The agent stopped his vehicle to allow Defendant to pass, but Defendant positioned his car alongside of the agent's. (*Id.*, PageID.81-82.) The agent lowered his window to communicate with Defendant, who told the agent to keep moving or otherwise leave the area. (*Id.*, PageID.82; ECF No. 21, Ex. 1 at 14:30-14:50.) According to the agent, Defendant presented a "semi-automatic handgun, waved it, and pointed it" at the agent. (ECF No. 22, PageID.82; ECF No. 22-2, PageID.94, 99.) The agent drove away, but he contacted local law enforcement at the Detroit Police Department ("DPD") to assist with the matter. (*Id.*) When they arrived, DPD officers removed Defendant from his vehicle, arrested him for felonious assault, and seized a Ruger handgun from his hip. (*Id.*)

Upon Defendant's arrest, he was placed in the back of a DPD patrol vehicle. (ECF No. 22, PageID.80.) The squad car was equipped with a camera, which captured

audio in addition to video footage. (ECF No. 22, PageID.83; ECF No. 21, Ex. 1.) Defendant made numerous boisterous, unprompted statements aloud to himself, many of which either criticized officers in a profane manner or complained about the reason for his arrest. (ECF No. 21, Ex. 1 at 10:45, 14:22-14:29, 27:30-29:30, 31:13, 48:20-48:52, 1:06:00). For instance, one of Defendant's spontaneous outbursts included the following monologue while looking directly at the squad car's camera:

> This is ridiculous, man. And I'm saying it on this cam. Yep, a guy arrived behind my apartment. Tinted windows. Looking. And all I did was ride up and ask him, 'who are you?' And he was told me [sic] I needed to keep moving. And I told him, "you need to keep moving." He should have said who the [expletive] he was.

(*Id.*, Ex. 1 at 14:27-14:50.) Defendant offered other unbidden statements, some of which were also related to the circumstances of his arrest, up until the 1:06:00 mark of the squad car's footage. Shortly after that point, the officers read Defendant his *Miranda* rights and began questioning him. (*Id.*, Ex. 1 at 1:09:25.)

Defendant maintains that just after the officers began asking him questions, he invoked the right to counsel—at which point questioning should have stopped—and that his responses to questions were nonetheless rendered involuntary by the conditions of his detention in the squad car. (*See* ECF No. 21, Ex. 1 at 1:09:59, 1:10:54; ECF No. 16, PageID.48-49.) Defendant therefore argues that any statements made on the day of his arrest must be suppressed at trial. (ECF No. 16, PageID.48-50.)

The government informs that the "statements made during and after the advice of rights are largely duplicative of statements he previously made aloud to himself, [and] are of limited probative value," and that it has "agree[d] not to use statements made after agents started talking to him at 1:06:00 of the squad car video during its case-in-

3

chief at trial." (ECF No. 22, PageID.81, 85-86, 88.) Therefore, the only issue before the court is whether the statements recorded prior to 1:06:00 of the squad car footage must be suppressed.

## II. DISCUSSION

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." This provision encompasses an obligation that police officers inform suspects of certain rights before interrogating them, including the right to remain silent and the right to counsel. *See Miranda*, 384 U.S. at 444; *United States v. Calvetti*, 836 F.3d 654, 662 (6th Cir. 2016) (describing *Miranda* warnings as "prophylactic rules stemming from the Fifth Amendment privilege against self-incrimination"). But this requirement applies only when a suspect is subject to "custodial interrogation." *Miranda*, 384 U.S. at 444. When police officers "ask questions of a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief." *Hill*, 11 F.4th at 425 (quoting *Oregon v. Elstad*, 470 U.S. 298, 317 (1985)).

Officers conduct an "interrogation" when they engage in "express questioning or its functional equivalent." *Tolliver v. Sheets*, 594 F.3d 900, 917 (6th Cir. 2010) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). The "interrogation" standard includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* (citing *Pennsylvania v. Muniz*, 496 U.S. 582, 600-01 (1990)). If a suspect invokes their right to counsel or silence, law

enforcement must "scrupulously honor" the request. *See Tolliver*, 594 F.3d at 917; *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *Michigan v. Mosley*, 423 U.S. 96, 101-03 (1975) (explaining that officers must "scrupulously honor" the "right to cut off questioning").

However, the Fifth Amendment does not bar the admission of statements that are volunteered by a suspect. *See Miranda*, 384 U.S. at 478 (noting that "[t]here is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime"). Indeed, it is well-established that "[a]ny statement given freely and voluntarily without any compelling influences is . . . admissible in evidence." *See id.* at 478; *United States v. McConer*, 530 F.3d 484, 495 (6th Cir. 2008); *accord United States v. Maddox*, No. 1:18-CR-169, 2020 WL 896769, at *5 (E.D. Tenn. Jan. 29, 2020), *report and recommendation adopted*, No. 1:18-CR-169, 2020 WL 888516 (E.D. Tenn. Feb. 24, 2020) ("[S]tatements which are volunteered, i.e., not made in response to custodial interrogation, will not be suppressed for lack of *Miranda* warnings."). In other words, there is no constitutional violation where statements were not produced by police interrogation. *See McConer*, 530 F.3d at 495 ("The admission of [the defendant's] unwarned statements that he had 'just gotten out of prison' and that he 'couldn't be around . . . the guns and the dope' did not violate *Miranda* because these statements were not obtained through interrogation."). Put simply, spontaneous, unprompted statements—though potentially incriminating—need not be excluded at trial. *See Innis*, 446 U.S. at 302-03 (holding there was no "interrogation" where officers engaged in a dialogue "to which no response from the respondent was invited"); *United States v. Chalmers*, 554 F. App'x 440, 447-48 (6th Cir. 2014) (finding that the

5

defendant's motion to suppress was properly denied where his statements arose from him "'blurt[ing]' out" out incriminating statements); *see also United States v. Hernandez-Cano*, No. 5:19-cr-00146, 2020 WL 4253305, at *7, *15 (E.D. Ky. July 24, 2020) (holding the defendant's "unsolicited statements" were admissible).

Here, none of the statements made by Defendant (until the 1:06:00 mark in the squad car footage) were responsive to any sort of police interrogation. Upon being placed in the back of the squad car, nearly all of his declarations were independent outbursts indicating frustration with his arrest; suppression of these statements is not warranted in the absence of police actions or words that were the "functional equivalent" of express questioning. *See, e.g.*, *Stanley v. Wainwright*, 604 F.3d 379, 382 (5th Cir. 1979) (finding no *Miranda* violation where detainee was recorded on video making statements "spontaneously while the policemen were physically absent").

While Defendant did briefly converse with some officers before the 1:06:00 mark of the video, the officers did not engage in "interrogation," since nothing they said or did made it "reasonably likely to elicit an incriminating response from the suspect." *United States v. Collins*, 683 F.3d 697, 703 (6th Cir. 2012) (quoting *Innis*, 446 U.S. at 300-01). For example, Defendant asked a DPD officer for information about the investigation, and she replied he was being arrested for felonious assault. (ECF No. 21, Ex. 1 at 27:13-30:05.) Defendant demanded to know who he assaulted, but the officer refused to give him the name of the alleged victim—without any further provocation, Defendant began to explain the circumstances of the crime and made several disrespectful comments about the investigating officers. (*Id.*) Yet, even these statements, which were in response to being informed of his charges, need not be suppressed because a

6

"factually accurate statement about the next step [law enforcement] would take as part of the arrest process" or a statement "concerning the nature of the charges to be brought against the [suspect]" do not constitute statements that can "reasonably be expected to elicit an incriminating response." *Collins*, 683 F.3d at 703. Nor were the officers required to interrupt Defendant during any of his unprompted, incriminating statements. *See Tolliver*, 594 F.3d at 920) (citing *Miranda*, 384 U.S. at 478) ("Police may listen to volunteered statements, and need not interrupt a suspect who is volunteering information in order to deliver a *Miranda* warning."). The Fifth Amendment does not require suppression of such statements.

The court need not address whether Defendant's statements made after the 1:06:00 mark were made in violation of *Miranda* because the government has agreed that it will not use them in its case-in-chief.[1]

### III. CONCLUSION

As explained above, the court must reject Defendant's claim that all of his statements made on the day of his arrest should be suppressed. (ECF No. 16, PageID.56.) The statements made before the *Miranda* warnings were not the product of police questioning. Thus, the prosecution will be permitted to use any of Defendant's

---

[1] Even if these statements were obtained in violation of *Miranda*, the government would still be permitted to use them for impeachment purposes. The prosecution is generally barred from using such statements only during its case-in-chief. *See Harris v. New York*, 401 U.S. 222, 226, (1971) ("The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent statements."); *Washington v. Renico*, 455 F.3d 722, 732 n.5 (6th Cir. 2006) (acknowledging that the *Harris* court made clear that "statements rendered inadmissible because of the government's failure to provide *Miranda* warnings may be used for impeachment"); *United States v. Issaghoolian*, 42 F.3d 1175, 1177 (8th Cir. 1994) ("It is well established that statements made without warnings adequate to *Miranda* are admissible for the limited purpose of impeachment.").

volunteered, spontaneous statements made prior to the 1:06:00 mark of the squad car footage. However, pursuant to its representation, the court expects that the government will refrain from using any of Defendant's statements made after that point in its case-in-chief; this does not restrict use if offered for impeachment purposes, or if the court subsequently orders otherwise. Accordingly,

IT IS ORDERED that Defendant's "Motion to Suppress Statements Obtained in Violation of *Miranda*" (ECF No. 16) is DENIED.

s/Robert H. Cleland            /<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated:  November 29, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 29, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner            /<br>
Case Manager and Deputy Clerk<br>
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\21.20459.BANES.MotionToSuppress.MAZ.2.RHC.2.docx